Steve **BASEDEN**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. S–12380.

Supreme Court of Alaska.

Jan. 4, 2008.

⊙76

Steve Baseden, pro se, Juneau.

William E. Milks, Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Following his wrongful termination and the filing of a formal grievance, a state employee refused the state's unilateral offer to "grant" his grievance through full back pay, benefits, and reinstatement to a new position at the same classification, pay, and duties as the former position. When the employee failed to show up to work for reinstatement, the state terminated him a second time. Later arbitration decisions concluded that the employee's unreasonable failure to return to work constituted just cause for the second termination and that the employee was not entitled to additional damages. The employee filed suit in the superior court to vacate the arbitration decisions and attempted to assert an allegedly new cause of action. After consolidating the employee's lawsuits, the superior court denied the motions to strike the arbitration decisions and held that the employee should "take nothing" beyond the compensation already awarded. Because the

employee did not demonstrate that the arbitration decisions were arbitrary and capricious or gross error, and because those decisions control the outcome of the new cause of action, we affirm the superior court's decisions.

## II. FACTS AND PROCEEDINGS

In March 1999 the Alaska Department of Transportation and Public Facilities (DOT) hired Steve Baseden as an Engineer/Architect III with a salary range of 22. Under the terms of his original contract, and according to the Public Employment Relations Act, Baseden was to have a one-year probationary period. In February 2000 DOT sent Baseden notice that he had to consent to an extension of his one-year probationary period or be fired. Baseden had received no written warnings or performance evaluations prior to this notice. In late February DOT and the union representing Baseden, the Alaska Public Employees Association (APEA), agreed to a six-month extension of probation. In April 2000 DOT terminated Baseden.

In October 2000 Baseden filed suit against the state in superior court for wrongful termination.[1] In May 2001 Superior Court Judge Larry R. Weeks held that the State Personnel Act prohibited periods of probation exceeding one year, and that as a result Baseden was not a probationary employee when he was fired. But Judge Weeks also held that Baseden had failed to exhaust his administrative remedies. Accordingly, Judge Weeks granted summary judgment to the state but made the grant of summary judgment contingent on the state accepting a grievance filed on the subject of Baseden's termination within fifteen days following the order.

Within fifteen days, APEA, on behalf of Baseden, filed grievance JSU–01–016 (first grievance) seeking reinstatement, back pay, and benefits. This first grievance, pertaining to the compensation owed to Baseden for his April 2000 termination, was not finally resolved by arbitration until July 2005. (This July 2005 arbitration decision came after the filing—in 2001—and resolution by arbitration—in 2002—of a later grievance, discussed below in detail. Each of these resolutions is challenged in this appeal.) Meanwhile, the state filed a motion for reconsideration of Judge Weeks's order, which was ultimately denied.

On or about August 9, 2001, the state's step three response[2] was due in Baseden's first grievance. Under Article 10.2(B) of the Collective Bargaining Agreement (CBA), "[i]f the Employer fails to comply in rendering a decision in the allotted time frame, the grievance shall advance without further delay to the next step of the procedure. Allotted time frames may be extended by mutual agreement. . . ." Under the CBA the next stage, step four, is arbitration.

The state did not file a timely step three response. The state did file a late step three response on August 10, 2001, denying the grievance as not arbitrable and noting that the superior court was reconsidering its decision finding Baseden a permanent employee. Later that same day, following the superior court's reaffirmance of its earlier decision, the state rescinded its response and wrote to APEA stating that it would send a new response within five business days.[3]

On August 17, 2001, the state, apparently believing that it could still file a step three response, notified APEA that it would grant the grievance. The state declared that "Mr. Baseden shall be made whole from April 15, 2000, less mandatory deductions and interim earnings." The state set a September 17, 2001 start date for Baseden to report for

---

1. *Baseden v. State*, Case No. 1JU–00–1731 (Alaska Super. May 31, 2001). This case is erroneously labeled as 1JU–01–1731 on the May 31, 2001 decision in the case, as well as in the superior court decision on review.

2. Under the Collective Bargaining Agreement, grievances are addressed using a four-step process. Because of the circumstances in this case, the grievance procedures began at step three.

3. Thus, even if the August 10, 2001 response would have been considered timely (the exact deadline depended on when the state received the APEA grievance letter), the state's ultimate step three response was untimely because it did not obtain APEA's consent to an extension of time.

duty. It indicated that Baseden would be paid at Salary Range 24, Step B, and that he would occupy a new Position Control Number (PCN), but with the same classification as his previous position, Engineer/Architect III. The state also asserted: "This decision is voidable in the State's sole discretion if the court order in 1JU–00–1731 CI is vacated, whereupon the State reverts to its decision in denying the grievance by letter of August 10, 2001."

On September 6, APEA declined to accept the state's proposed resolution of the grievance and, noting that the state had failed to respond to step three in a timely manner, demanded arbitration on the matter.

Baseden did not return to work on September 17 and the following day the state offered to consider a request from the union for a new return-to-work date. The state also notified APEA that its offer of reinstatement was no longer conditional because the state had "decided not to appeal the court order." The state elaborated: "In other words, the State is no longer reserving any rights with respect to the legal issues raised by Judge Weeks' order and Mr. Baseden can return to work without concern of further action by the State in that case." The state clarified that the class specifications, duties, and pay were the same in the PCN Baseden had requested in his grievance and in the new PCN that the state was offering. In a separate letter the state wrote to APEA stating that in light of its decision to grant Baseden's grievance it did not "see any controversy or dispute remaining" and thus it asked APEA to "identify exactly what controversy or dispute remains to be arbitrated."

APEA replied to the state on September 22 that it did not agree that Baseden was made whole by its offer because the state did not offer to cover attorney's fees or compensatory damages and because the PCN of Baseden's new position was different than the one requested in the grievance. APEA's reply ignored the state's detailed September 18 response to the union's concerns about the job offer. The state subsequently replied that the CBA did not allow for recovery of attorney's fees or compensatory damages be-

yond the type provided in the state's make-whole offer. The state also wrote: "Regardless of the ultimate resolution of these [two] issues, none of these matters interfere with Mr. Baseden's ability to return to work." The state proposed a new return-to-work date of October 8, 2001.

On September 26, APEA requested that the state extend Baseden's return to work date to October 15, 2001. On September 28, the state granted APEA's request. The state also stated that if Baseden did not report to work on October 15 "the State will consider Mr. Baseden to have voluntarily relinquished his position."

Baseden did not report to work on October 15. In a letter to APEA dated October 22, 2001, the state notified APEA that because Baseden failed to report to work on October 15, and because APEA did not "offer any legitimate excuse for his failure to do so," the state "considers Mr. Baseden to have voluntarily relinquished his position." The state then requested information and documentation regarding Baseden's mitigating income to be used for calculating the proper amount of back pay and benefits owed to Baseden. Later that month DOT sent out a personnel action form to Baseden stating that Baseden voluntarily relinquished his position on October 15.

In November 2001 APEA filed a new grievance, JSU–01–026 (second grievance), on Baseden's behalf to appeal his alleged voluntary relinquishment of employment on October 15. In August 2002 Arbitrator William Dorsey issued a nineteen-page decision (Dorsey decision) denying the second grievance, finding that Baseden's refusal to report to work on October 15 was without any legitimate reason, was deliberate, and constituted just cause for dismissal.

In April 2003 the Alaska Labor Relations Agency (ALRA) held that the first grievance could proceed to arbitration because there was a dispute as to whether all the issues regarding the April 2000 arbitration were resolved, including issues of damages and attorney's fees. The ALRA found that the state could not unilaterally impose a "settlement" despite purporting to grant everything

it believed the grievant was entitled to. In a subsequent appeal the superior court affirmed the ALRA decision.[4]

In July 2005 Arbitrator Janet Gaunt issued a thirty-eight page decision (Gaunt decision) on the first grievance. Arbitrator Gaunt found that in light of the State's concession that it violated Article 5 of the CBA when it terminated Baseden on April 14, 2000, the grievance over that termination was not settled when the state offered Baseden reinstatement and back wages and benefits. Accordingly, Arbitrator Gaunt awarded Baseden back wages and benefits, as well as interest on those amounts. The arbitrator noted that although Baseden's own failure to provided documentation about his interim earnings had delayed his receipt of payment, Baseden was due interest because of the state's greater misconduct. But Arbitrator Gaunt declined to grant punitive damages, compensatory damages for emotional distress, or attorney's fees and expert fees from Baseden's October 2000 wrongful termination suit. Arbitrator Gaunt exercised her discretion to defer to the Dorsey decision on matters pertaining to Baseden's October 15, 2001 termination, and declined to grant any wages or benefits for the period following October 15, 2001. Finally, Arbitrator Gaunt also found that the state unjustifiably caused APEA to appear before the ALRA and the superior court on the matter of the arbitrability of the first grievance. Arbitrator Gaunt awarded APEA its attorney's fees as a remedy.

In September 2005 Baseden appealed the Dorsey decision to the superior court. On the same day, Baseden separately appealed the Gaunt decision. In January 2006 Baseden filed a new suit against the state seeking damages related to his April 2000 firing and subsequent dealings with the state (2006 case).

In March 2006 Superior Court Judge Patricia A. Collins consolidated all three of Baseden's pending cases, finding that the cases involved "questions pertaining to two arbitration awards which themselves involve common questions of law or fact." In May 2006 Judge Collins denied Baseden's motions to set aside the Dorsey and Gaunt decisions. Baseden filed a motion for reconsideration on May 9, which Judge Collins denied on May 18.

Baseden filed a motion dated May 23, 2006, for summary judgment in the 2006 case. Judge Collins issued a judgment on the consolidated cases on May 24 declining to provide Baseden any further relief. Upon Baseden's filing of a motion for amended judgment to clarify that he was still entitled to such relief awarded to him in the Gaunt decision that was not on appeal, Judge Collins issued an order noting that "[t]he final judgment entered in the consolidated cases does not impact the arbitration award." Accordingly, the back pay and benefits that Baseden received for the period from April 14, 2000 through October 15, 2001, the date he failed to return to work, remained undisturbed.

Baseden, appearing pro se, appeals various decisions of the superior court, both procedural and substantive.

## III. STANDARD OF REVIEW

We review the superior court's review of an arbitration award *de novo* to the extent that it involves questions of law and contract interpretation.[5]

We give an arbitrator's decision great deference.[6] Both the common law and Alaska statutes "evince a 'strong public policy in favor of arbitration.'"[7] In order to encourage parties to pursue arbitration, Alaska courts have a policy of minimizing their interference with arbitration decisions.[8] We have

4. *State v. Alaska Pub. Employees Ass'n*, No. 1JU–03–379 (Alaska Super. March 24, 2004).

5. *Univ. of Alaska v. Alaska Cmty. Colleges' Fed'n of Teachers, Local 2404*, 64 P.3d 823, 825 (Alaska 2003).

6. *Alaska State Employees Ass'n/AFSCME Local 52 v. State*, 74 P.3d 881, 882 (Alaska 2003).

7. *Dep't of Pub. Safety v. Pub. Safety Employees Ass'n*, 732 P.2d 1090, 1093 (Alaska 1987) (quoting *Univ. of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 (Alaska 1974)).

8. *Id.*

previously declined, however, to "decide definitively" the standard of review of compulsory grievance arbitration awards.[9]

In general we have applied the highly deferential "gross error standard" to review grievance arbitration awards,[10] but we have not decided whether the less deferential "arbitrary and capricious" standard should apply where the grievance arbitration is compulsory.[11] We have defined "gross error" as being "only those mistakes which are both obvious and significant."[12] Because the arbitration decisions on review here withstand the less deferential arbitrary and capricious standard, we decline to decide precisely which standard of review applies.

■■■ We review the decision to order consolidation of cases for an abuse of discretion.[13] We also review for an abuse of discretion the superior court's decision to treat a pro se litigant's untimely motion for summary judgment as a motion for reconsideration.[14] We will not overturn an order denying a motion for reconsideration unless there has been an abuse of discretion.[15]

## IV. DISCUSSION

### A. We Uphold the Arbitrators' Decisions.

#### 1. Arbitrator Dorsey did not act in an arbitrary and capricious manner in finding that Baseden's rejection of an offer of reinstatement was just cause for his discharge.

■■ Arbitrator William Dorsey conducted a full hearing and issued a nineteen-page decision on the merits to decide the following question:

Did the grievant's failure to report for work as scheduled on October 15, 2001 give the employer "just cause" (as that

phrase is used in Article 5 of the parties' 2000–2003 contract) to dismiss him?

This formulation of the issue was framed with the consent of the parties.

The arbitrator considered Baseden's arguments regarding his legitimate reasons for not reporting to work on October 15, 2001, as scheduled, including that Baseden had cause to distrust the employer's representatives and that Baseden did not receive a complete position description for the new position (PCN 25–2311) which the state was offering him. Arbitrator Dorsey decided, however, that Baseden's concern over the change of PCN did not warrant absenting himself from work because Baseden had been notified that he would be returning to work as an Engineer/Architect III, and it is this classification, not the PCN, which determines an employee's salary. Moreover, Arbitrator Dorsey found that because the state had already hired someone else to fill Baseden's old PCN, and because Baseden knew that fact prior to receiving notice of the reinstatement offer, Baseden knew or should have known that he would be working as an Engineer/Architect III under a different PCN whenever he returned to the payroll. Arbitrator Dorsey also found that the duties and tasks described on Baseden's "incomplete position description" were "exactly the same" as those he had under his former PCN. After considering these factors, Arbitrator Dorsey concluded:

The grievant had no legitimate reason for his failure to report for work at DOT & PF on October 15, 2001 as scheduled, and therefore his failure to return to work for the employer on that day was deliberate.

. . . .

. . . Under all of the facts and circumstances of this case, the grievant's deliber-

---

9. *Alaska State Employees Ass'n,* 74 P.3d at 882.

10. *Id.* (citing *Pub. Safety Employees Ass'n. Local 92 v. State,* 902 P.2d 1334, 1336 (Alaska 1995)).

11. *Univ. of Alaska v. Alaska Cmty. Colleges' Fed'n of Teachers, Local 2404,* 64 P.3d 823, 826 (Alaska 2003).

12. *City of Fairbanks v. Rice,* 628 P.2d 565, 567 (Alaska 1981).

13. *See Brown v. Hawkins,* 418 P.2d 28, 31 (Alaska 1966).

14. *See Snyder v. Am. Legion Spenard Post No. 28,* 119 P.3d 996, 1001 (Alaska 2005) (reviewing for abuse of discretion trial court's decision on guidance to pro se litigant).

15. *Magden v. Alaska USA Fed. Credit Union,* 36 P.3d 659, 661 (Alaska 2001).

ate failure to report for work at DOT & PF as scheduled on October 15, 2001 constituted an immediately dischargeable offense under Article 5 of the parties' contract.

The Dorsey decision is further supported by the Gaunt decision, in which Arbitrator Gaunt ruled that deference to Arbitrator Dorsey's decision was warranted under the circumstances because Baseden received a full and fair prior hearing and Arbitrator Dorsey issued a clear and well-reasoned opinion.

Baseden's pro se briefing does not specifically articulate any reasons why the Dorsey decision was either "gross error" or "arbitrary and capricious," and is instead directed towards the superior court's failure to properly evaluate the arbitrators' decisions.[16] Baseden argues that "special circumstances" warranted his rejection of the offer of reinstatement. Baseden's special circumstances included the fact that he was bound by statute to use a grievance procedure, that he was an employee of the state of Alaska, and that he would have lost his remaining rights in his first grievance by accepting the position.[17] Baseden does not make clear the legal relevance of the first two factors, and he provides no factual or legal support for the proposition that his return to work would have terminated his remaining rights under his first grievance. To the contrary, the state notified Baseden in its letter of September 24, 2001, that "[r]egardless of the ultimate resolution of [Baseden's claim to compensatory damages and attorney's fees], none of these matters interfere with Mr. Baseden's ability to return to work."

Moreover, the record indicates that Arbitrator Dorsey fully considered these facts and concluded that Baseden was not justified in refusing to return to work. Because Baseden's claims are without support, and because the arbitrator's decision was not arbitrary or capricious, we affirm the arbitrator's decision regarding Baseden's eligibility for wages and benefits subsequent to October 15, 2001.

Baseden also argues that the chronological order of the arbitration hearings somehow deprived him of his rights because Arbitrator Dorsey made his decision without the benefit of knowing that Arbitrator Gaunt would conclude two years later that the state was not allowed to unilaterally settle the grievance procedure. Baseden's claim that he was prejudiced by the order of the arbitration is without merit because Arbitrator Dorsey was fully informed of the underlying circumstances, and because Arbitrator Gaunt's review of the Dorsey decision resulted in her own decision to give it deference.

Because the Dorsey decision is well-reasoned and legally supported, and because Baseden has not shown it to be either arbitrary and capricious or gross error, we affirm the superior court's decision not to vacate it.

2. **Arbitrator Gaunt did not act in an arbitrary and capricious manner in declining to grant additional benefits or in deferring to the Dorsey decision on the matter of wages and benefits following October 15, 2001.**

█ Arbitrator Gaunt issued a thirty-eight-page decision which likewise followed a full hearing. Arbitrator Gaunt decided the following issues pertaining to the first grievance:

1. In light of the State's concession that it violated Article 5 of the collective bargaining agreement when it terminated Mr. Baseden on April 14, 2000, was the grievance over that termination settled when the State offered Mr. Baseden reinstatement and restoration of back wages and benefits?

---

**16.** The section of Baseden's brief arguing "Arbitrators Gaunt and Dorsey Erred" is only two sentences long and purports to incorporate, without elaboration, seventy pages of the excerpt. Where possible, and in light of Baseden's pro se status, we have gleaned his arguments disputing the decisions from the other forty-six pages of briefing.

**17.** Baseden's alleged special circumstances appear to be slightly different than those presented to the arbitrator, which emphasized the different PCN. To the extent the issues now raised were not raised below, they are waived. *See Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001) (concluding that argument not raised below was waived).

2. If not, what is an appropriate remedy?
3. Did the State violate Article 10.2(B) of the collective bargaining agreement when processing the [first] Baseden grievance?
4. If so, what is an appropriate remedy?

On issues one and three Arbitrator Gaunt ruled in Baseden's favor, finding that the first grievance was not settled when the state offered reinstatement and back wages, and finding that the state violated Article 10.2(B) when it refused to arbitrate the first grievance following its offer of reinstatement. Those aspects of the Gaunt decision are not on appeal here.

Baseden appears to request that the Gaunt decision be vacated to the extent that Arbitrator Gaunt refused to overturn the Dorsey decision and with respect to the appropriate remedies. The Gaunt decision deferred to the Dorsey decision on the issue of whether just cause existed for Baseden's termination after Baseden failed to report to work on October 15, 2001. Before arriving at her conclusion, Arbitrator Gaunt heard arguments by APEA as to why she should circumvent the Dorsey decision, examined the fairness of the Dorsey hearing, and considered the legal reasons and the contractual reasons for considering the Dorsey decision final and binding. Based on our review of the decision and record, we conclude that Arbitrator Gaunt's decision to defer to the Dorsey decision was well-reasoned and not arbitrary or capricious.

Baseden sought damages for his initial wrongful termination and sought additional damages to compensate him for the way the state had handled his grievances. Arbitrator Gaunt had the ability to grant additional creative remedies where warranted [18] and considered several remedies including punitive damages, front pay, and an award for emotional distress. After reviewing in a full hearing the facts of Baseden's grievance and the state's subsequent unilateral offer of

judgment, Arbitrator Gaunt determined that Baseden's grievance was appropriately remedied by the award of back wages and benefits that he would have earned if he had remained employed by the state from April 14, 2000, through the date of his failure to return to work, October 15, 2001. This was the same make-whole offer that the state had attempted to unilaterally grant. Arbitrator Gaunt awarded Baseden interest on that money, and awarded APEA certain additional attorney's fees to compensate Baseden's union for the expense of extra litigation. Ultimately, Arbitrator Gaunt decided not to grant Baseden additional compensation of the type that he sought in his subsequent 2006 case. In light of the state's offer of back-pay and reinstatement and Baseden's refusal to return to work, we conclude that the decision not to award Baseden additional compensation was not in gross error or arbitrary and capricious.

Because Baseden fails to substantiate any allegation that the Gaunt decision was either clearly erroneous or arbitrary and capricious, and because our review of the record reveals no such error, we affirm the superior court's decision not to vacate the order.

**3. Baseden is not entitled to bring a new claim or receive an amended arbitration award based on the theory that he was not an employee at the time of his alleged second discharge.**

■ Baseden argues that he was not an employee on October 15, 2001, when he was offered reinstatement. He argues that regardless of the existence of just cause, a non-employee cannot be terminated and therefore his rejection of the state's reinstatement offer cannot result in his termination. The superior court held that this argument was waived because it was not raised before the arbitrators. We agree that the argument was not raised and was therefore waived.[19]

---

**18.** *Alaska Pub. Employees Ass'n v. State, Dep't of Envtl. Conservation,* 929 P.2d 662, 666 (Alaska 1996) (holding that arbitrators have broad discretion in fashioning remedies).

**19.** *See Chicago Newspaper Guild v. Field Enters., Inc.,* 747 F.2d 1153, 1158 (7th Cir.1984) (pre-

cluding party from challenging arbitration remedy with argument not presented below "[i]n order to preserve the efficiency and integrity of the arbitral process"); *United Steelworkers of Am. v. Smoke–Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir. 1981) ("Parties to arbitration proceedings cannot

Moreover, it was APEA, Baseden's representative, that chose to frame the issue as a termination. APEA explicitly noted in its step two grievance filing in the Dorsey arbitration that because the *effect* of Baseden's alleged "voluntary relinquishment" of the October 2001 job was the same as a termination, the state had violated Article 5 by terminating Baseden for a second time without just cause. In essence it appears that Baseden's union representatives framed the issue of Baseden's refusal to return to work within the part of the CBA that the situation most closely approximated.

In his brief before this court, Baseden presents this argument in a new light, arguing that the "parties did not agree to submit to arbitration" the issue of offer rejection. As the state notes in its brief, Baseden's argument is without merit because regardless of the label attached to Baseden's situation in October 2001, the parties did submit to arbitration the merits of whether or not Baseden reasonably refused to go to work when offered the position and what his entitlement was to any subsequent wage and benefit accrual.

Baseden argues that he did not waive his argument that he was not an employee because in step two of the grievance process APEA also included the following paragraph:

> APEA/AFT disagrees that Mr. Baseden voluntarily relinquished his position. There are several problems with the State's action. First, Mr. Baseden was non-retained by the State on April 15, 2000 from PCN 25–3185. Mr. Baseden has never been reinstated as a permanent employee to PCN 25–3185 by the State. How can he relinquish something that he was already terminated from over a year ago?

It was in this same letter, however, that the union chose to file the new grievance and chose to frame the issue as a violation of Article 5 of the CBA regarding termination without just cause. It would be nonsensical to simultaneously allow the parties to frame the question for arbitration and then allow the grievant to complain that the central issue was not arbitrated. The merits of this issue were reached in arbitration, and to the extent that the argument was not addressed in arbitration it is waived.

 Finally, as Judge Collins adroitly noted, there is nothing in the CBA or in our case law that dissuades employers from offering reinstatement, even prior to the completion of all facets of a grievance dispute.[20] After an employee unreasonably refuses an offer of unconditional reinstatement, the employee is not entitled to continued claims for lost wages and benefits.[21] Arbitrator Dorsey found that Baseden's refusal to return to work was unreasonable, and thus Baseden is not entitled to lost wages and benefits for the time period after October 15, 2001.

### 4. The arbitrators' decisions are not invalid due to fraud.

 Baseden raises the issue of fraud before this court. Alaska case law holds that arbitration decisions, though given great deference, can be overturned "where there has been gross negligence, fraud, corruption, gross error or misbehavior on the part of the arbitrator."[22] However, Baseden's allegations of fraud seem to misunderstand our case law. Instead of alleging fraud on the part of the arbitrator or fraud within either the Dorsey or Gaunt arbitration proceedings, Baseden's fraud allegations center on the actions that the state took in offering reinstatement to Baseden in October. Because all of the facts that Baseden alleges were

sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator.").

**20.** *Cf. Ford Motor Co. v. EEOC,* 458 U.S. 219, 232, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982) (holding that employer's unconditional offer of reinstatement tolls further accrual of back pay liability).

**21.** *Id.* at 231–32, 102 S.Ct. 3057. The situation is different where the employee reasonably re-

fuses an offer of reinstatement. *See Pyramid Printing Co. v. Alaska State Comm'n for Human Rights,* 153 P.3d 994 (Alaska 2007) (holding that employee who had been sexually harassed reasonably refused offer of re-employment because she reasonably believed intolerable conditions had not changed).

**22.** *Nizinski v. Golden Valley Elec. Ass'n, Inc.,* 509 P.2d 280, 283 (Alaska 1973).

part of the record considered by the arbitrators, there is no fraud-based reason for this court to overturn the arbitration decisions.

## B. The Superior Court Did Not Abuse Its Discretion in Consolidating Baseden's 2006 Case with His Other Two Cases.

Under Alaska Civil Rule 42(a), judges are given clear authority to consolidate cases. Rule 42(a) provides, in relevant part:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid costs or delays.

Alaska case law places the decision to consolidate cases firmly within the discretion of the superior court judge.[23] Nothing in Rule 42 suggests that the legal theories of consolidated cases must be identical in order for a judge to consolidate them.

Here, there was ample commonality in both the legal and factual questions between Baseden's 2006 case and his other two cases to set aside the arbitrators' decisions. Baseden's factual claims in his 2006 case were entirely based on facts intimately intertwined with his other two cases. Additionally, Baseden's legal theories for recovery were based on the outcome of Arbitrator Gaunt's decision, the state's alleged misrepresentation in offering Baseden reinstatement, and the state's subsequent dismissal of Baseden. Judge Collins, in her order granting consolidation, found that "these cases involve questions pertaining to two arbitration awards which themselves involve common questions of law or fact, such as Baseden's termination on October 15, 2001." This finding was not clearly erroneous, and hence the court's decision to consolidate Baseden's cases was not an abuse of discretion.

Baseden argues that his 2006 case claims "could not have any common questions of law with the review of arbitrator decisions under

the gross error standard ... [because the central complaint in the 2006 case] is that the Plaintiff was not an employee and therefore could not be bound by the terms of the CBA to which he was not a party at the time of the alleged misrepresentation." The fact remains, however, that through his 2006 case Baseden was seeking compensation for the same dispute for which he previously sought relief through arbitration. Although Baseden may desire to file his complaint anew without having to defer to the arbitrators' decisions, he offers no legal support for the assertion that he should be able to so circumvent their authority. He therefore has not shown that the superior court abused its discretion in consolidating the cases.

## C. The Superior Court Did Not Err in Treating Baseden's Motion for Summary Judgment as an Untimely Motion for Reconsideration and in Denying It.

Baseden asserts that the superior court erred in its ruling that his motion for summary judgment was an untimely motion for reconsideration. He argues that he did not receive the consolidation notice and that as a result the pleadings used by Judge Collins to rule on the consolidated cases did not encompass his arguments for his 2006 case. Baseden overlooks the fact that when the cases were consolidated, Judge Collins then had access to the pleadings he entered in his 2006 case, and that Judge Collins explicitly acknowledged his filings in the 2006 case, referring to it as "his most recent lawsuit" and placing it within the procedural timeline. Moreover, the legal arguments of his 2006 case, regarding lack of an employment contract, were clearly addressed (and determined to be waived) by Judge Collins.

Baseden allegedly never received the March 28 consolidation order. It is apparent from Baseden's motion for reconsideration of the May 4 order and his subsequent motion for summary judgment in his 2006 case that he did not understand that court's May 4 decision applied to the 2006 case as well. Baseden does not provide any briefing

**23.** *Brown v. Hawkins,* 418 P.2d 28, 31 (Alaska 1966).

on the legal significance of his failure to receive the court's consolidation order, and the state did not address the issue. Because the issue is not adequately briefed, it is waived.[24]

Baseden also argues that his motion for reconsideration was not untimely because final judgment had not yet been issued. However, Alaska Civil Rule 77(k) provides that motions for reconsideration of a ruling "must be made within ten days after the date of notice of the ruling ... unless good cause is shown why a later filing should be accepted." The superior court issued its ruling on May 4, 2006. Baseden's motion came nineteen days later, and thus was rightly considered untimely.

We conclude that the superior court did not abuse its discretion in treating Baseden's untimely motion for summary judgment as an untimely motion for reconsideration.

## V. CONCLUSION

Because the arbitrators' decisions were not arbitrary and capricious and were not the result of fraud, and because the superior court did not abuse its discretion in consolidating Baseden's three claims, we AFFIRM the superior court's judgment in all respects.

BRYNER, Justice, not participating.

---

**24.** *See Brady v. State,* 965 P.2d 1, 20 (Alaska 1998) (holding inadequately briefed argument is waived despite court's solicitude for pro se litigants).